# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

JAMES M. REESE,

        Plaintiff,

vs.

CLARK COUNTY DETENTION CENTER, *et al.*,

        Defendants.

Case No.: 2:15-cv-01633-GMN-VCF

**ORDER**

Pending before the Court is the Motion for Summary Judgment, (ECF No. 75), filed by Defendants Connie Bisbee; Ed Gray, Jr.; Michael Keeler; Darla Foley; Todd Kaylor; Joni Billich; and Michael Sliva (collectively "Defendants"). Plaintiff James M. Reese ("Plaintiff") filed a Response, (ECF No. 86), and Defendants filed a Reply, (ECF No. 90). For the reasons discussed below, Defendants' Motion for Summary Judgment is **GRANTED**.

## I.   BACKGROUND

This case arises out of Defendants' alleged violations of Plaintiff's constitutional rights before and during the revocation of Plaintiff's parole. (*See* Violation Report at 2, Ex. 1 to Mot. Summ. J. ("MSJ"), ECF No. 75-1) (stating that Plaintiff received parole on March 19, 2013). The alleged violations occurred on several days between August 21, 2013, and July 28, 2014.

The first alleged constitutional violations occurred on August 21, 2013, by Defendants Todd Kaylor ("Kaylor") and Michael Sliva ("Sliva")—who are both Parole and Probation Officers with the Nevada Department of Public Safety in the Division of Parole and Probation. (*Id.*). On that day, Plaintiff arrived at the Nevada Parole and Probation Building ("Nevada Parole Building") to discuss a Temporary Order for Protection Against Domestic Violence, which had been filed against Plaintiff about one week earlier. (*Id.*). Plaintiff timely appeared at

the location, and he parked his car in a city parking lot nearby the Nevada Parole Building. (Resp. 2:26–27, ECF No. 86). An individual named Shannon Neal ("Neal") also arrived with Plaintiff, but Neal stayed in Plaintiff's car during the visit. (*See* Violation Report at 2, Ex. 1 to MSJ).

When Plaintiff entered the Nevada Parole Building, Kaylor presented Plaintiff with the Temporary Order for Protection. (*Id.*). Additionally, Kaylor instructed Plaintiff to provide a urine sample in accord with his parole guidelines. (*Id.*). Plaintiff alleges that while he attempted to provide the urine sample, Kaylor harassed Plaintiff by touching his buttocks, pushing up against him, and making sexual comments. (Resp. 4:15–25). Because of Kaylor's actions, Plaintiff alleges that he was unable to provide the urine sample. (*Id.* 5:1–2). Consequently, Kaylor ordered Plaintiff to sit in the Nevada Parole Building's lobby to drink water. (Kaylor Dec. ¶ 14, Ex. 3 to MSJ, ECF No. 75-3).

While Plaintiff sat in the lobby, Kaylor performed a review of Neal's background. (Violation Report at 2, Ex. 1 to MSJ); (Kaylor Dec. ¶ 20, Ex. 3 to MSJ). The review disclosed that she had an active misdemeanor warrant alongside a criminal history of narcotics use. (Kaylor Dec. ¶ 20, Ex. 3 to MSJ). Kaylor then spoke with Neal in Plaintiff's parked car, and he informed her that she could not have contact with Plaintiff because of her active warrant. (*Id.* ¶ 21). Because of what Kaylor said, Neal left Plaintiff's car while Plaintiff remained in the Nevada Parole Building waiting to provide the urine sample. (Resp. 5:23–28, 6:1–2); (Kaylor Dec. ¶¶ 18–29, Ex. 3 to MSJ).

Once Kaylor returned to the Nevada Parole Building, he discovered that Plaintiff was no longer there. (Suppl. to Violation Report at 2, Ex. 2 to MSJ, ECF 75-2). Kaylor and Sliva then went to Plaintiff's vehicle to look for him, but they were unable to find him. (Kaylor Dec. ¶¶ 22–25, Ex. 3 to MSJ). With Plaintiff missing, Kaylor and Sliva called a tow service to have Plaintiff's car removed from the city parking lot. (*Id.* ¶¶ 25–29). Kaylor and Sliva thereafter

performed an inventory search of the car and impounded it. (*Id.* ¶¶ 25–28). Plaintiff states that "his car, keys, and cellphone were never returned to him" after this incident. (Resp. 3:1–3).

On August 24, 2013, the Las Vegas Metropolitan Police Department arrested Plaintiff for failing to update his address as required under Nevada law for convicted sex offenders. (Arrest Report at 2, Ex. 6 to MSJ, ECF No. 75-6); s*ee* Nev. Rev. Stat. 170D.550. The arresting officers stated that a scope inquiry revealed a registered address for Plaintiff of 122 Sir George Dr., Las Vegas, Nevada 89110, which was contrary to Plaintiff's then address of 3890 S. Nellis Blvd., Space #10, Las Vegas, Nevada 89121 (the "Nellis Blvd. address"). (*Id.* at 2–4). Plaintiff claims that this arrest was in error because he had registered the Nellis Blvd. address prior to August 24, 2013. (Resp. 6:20–27). Moreover, Plaintiff alleges that the Nevada Parole and Probation Division knew of this prior registration because they visited Plaintiff's Nellis Blvd. address for a monthly parole visit on August 13, 2013. (*Id.* 3:13–15).

Following Plaintiff's arrest, the Nevada Board of Parole Commissioners ("Parole Board") scheduled a Parole Revocation Hearing on November 5, 2013. (MSJ 3:27–28). The Parole Board at the hearing consisted of Defendants Ed Gray, Jr. ("Gray, Jr."), and Maurice Silva ("Silva"). (Tr. of Parole Hearing at 2, Ex. 7 to MSJ, ECF No. 75-7).

The November 5, 2013 Parole Revocation Hearing focused on six alleged parole violations by Plaintiff. (*See* Certification of Action at 2, Ex. 8 to MSJ, ECF No. 75-8). The Parole Board continued Plaintiff's hearing several times, however. (*Id.* at 3); (Certification of Action at 3, Ex. 10 to MSJ, ECF No. 75-10); (Certification of Action at 3, Ex. 12 to MSJ, ECF No. 75-12). The first continuance scheduled the hearing for a later date of December 10, 2013, in order for Plaintiff to undergo a "Static 99" psychosexual assessment for recidivism from the Nevada Department of Corrections due to his prior conviction for rape with a deadly weapon in 1973. (Certification of Action at 2, Ex. 8 to MSJ). Before that December hearing, however, Plaintiff still had pending charges from his August 24, 2013 arrest for failure to register his

address. (Certification of Action at 2, Ex. 10 to MSJ). Those pending charges thus required a second continuance of Plaintiff's hearing—until March 4, 2014. (*Id.*). The Parole Board continued that March hearing as well, and it ultimately took place on July 22, 2014. (Certification of Action at 2, Ex. 14 to MSJ, ECF No. 75-14).

At the July 22, 2014 hearing, the Parole Board consisted of Defendants Connie Bisbee ("Bisbee"); Silva; and Michael Keeler ("Keeler"). (Tr. of Parole Hearing at 3, Ex. 13 to MSJ, ECF No. 75-13). Also, Defendant Joni Billich ("Billich")—who is a Parole and Probation Officer—testified about Plaintiff's failure to register his proper address. (*Id.* at 13). At the beginning of the hearing, Plaintiff pleaded guilty to a financial obligation charge for failing to pay restitution. (*Id.* at 4). In addition, the Parole Board found Plaintiff guilty of a Narcotics charge for failing to follow related directives and conduct regarding the urine sample on August 21, 2013. (*Id.* at 38). The Parole Board consequently revoked Plaintiff's parole for two years, and Plaintiff returned to prison. (Resp. 3:27, 4:1). Plaintiff was released from prison on May 25, 2017. (*Id.* 9:1–2).

Plaintiff filed his initial Complaint against Defendants on August 24, 2015, alleging 108 counts related to his parole revocation. (Civil Rights Compl. at 1–97, Ex. 1 to Appl. Proceed *In Forma Pauperis*, ECF No. 1-1); (Civil Rights Compl. at 1–62, Ex. 2 to Appl. Proceed *In Forma Pauperis*, ECF No. 1-2). The initial Complaint named forty-four Defendants, consisting of Clark County Detention Center ("CCDC") employees, Nevada Department of Corrections ("NDOC") employees, High Desert State Prison employees, Nevada Parole Commissioners, Nevada Parole and Probation employees, and Las Vegas Metropolitan Police Department employees. (Civil Rights Compl. at 1–97, Ex. 1 to Appl. Proceed *In Forma Pauperis*); (Civil Rights Compl. at 1–62, Ex. 2 to Appl. Proceed *In Forma Pauperis*). The Court issued a Screening Order, however, that dismissed the initial Complaint in its entirety without prejudice and with leave to amend. (Screening Order at 6–7, ECF No. 7).

Plaintiff filed a new Complaint, (ECF No. 8), on February 1, 2016, and he amended that new Complaint on May 13, 2016. (ECF No. 15). The Court then issued a Screening Order on this Amended Complaint, which allowed Plaintiff to proceed on the following three causes of action against Defendants for compensatory damages: (1) unlawful seizure of Plaintiff's car in violation of the Fourth Amendment by Kaylor and Sliva; (2) unreasonable search in violation of the Fourth Amendment by Kaylor while Plaintiff attempted to give a urine sample; and (3) deprivation of due process under the Fourteenth Amendment by Defendants Connie Bisbee; Ed Gray, Jr.; Maurice Silva; Michael Keeler; Darla Foley; and Joni Billich regarding Plaintiff's parole revocation and confinement. (Screening Order at 3, 11, ECF No. 20). On February 2, 2018, Defendants filed the instant Motion for Summary Judgment, (ECF No. 75).

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable fact-finder could rely to find for the nonmoving party. *See id.* "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (*quoting First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (*citing United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary

judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404,

1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth; it is to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. **DISCUSSION**

Defendants present three arguments as to why the Court should grant their Motion for Summary Judgment. First, Defendants argue that Plaintiff's claims of unreasonable search and seizure against Kaylor and Sliva are barred by the applicable statute of limitations. (MSJ 7:1–9, ECF No. 75). Second, Defendants argue that they are either absolutely or qualifiedly immune from Plaintiff's claims. (*Id.* 9:1–11:10). Third, Defendants argue that Plaintiff fails to state a cognizable § 1983 claim for any injury related to his confinement.[1] (*Id.* 11:11–12:4). The Court will address each argument in turn.

---

[1] Defendants' Motion for Summary Judgment, (ECF No. 75), argues that Plaintiff's due process claim related to his confinement is not cognizable under *Heck v. Humphrey*, 512 U.S. 477 (1994), which bars § 1983 claims that challenge confinement before the confinement has been reversed on direct appeal, expunged by executive order, declared invalid by an authorized state tribunal, or called into question by a federal court's issuance of writ of habeas corpus. In response, Plaintiff seems to not dispute that argument; instead, Plaintiff appears to argue that

### A. Statute of Limitations

Plaintiff's claims against Defendants all arise under 42 U.S.C. § 1983; and are thus governed by Nevada's two-year statute of limitations for personal injury actions. *Knox v. Davis*, 260 F.3d 1009, 1012 (9th Cir. 2001) (explaining that the statute of limitations for § 1983 actions is governed by "the forum state's statute of limitations for personal injury actions"); Nev. Rev. Stat. 11.190(4)(2) (imposing a two-year statute of limitations on personal injury actions in Nevada courts). It is a question of federal law, however, as to when the statute of limitations begins to run on a claim. *Venegas v. Wagner*, 704 F.2d 1144, 1145 (9th Cir. 1983). "Under federal law, 'a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.'" *Knox*, 260 F.3d at 1013 (*quoting Tworivers v. Lewis*, 174 F.3d 987, 991 (9th Cir.1999)).

In this case, Plaintiff concedes that he failed to bring his second and third causes of action for unreasonable search of his person and unlawful seizure of his car, keys, and phone within the two-year statute of limitations. (Resp. 12:1–2, ECF No. 86). Nonetheless, Plaintiff argues that his claims are not barred because the search and seizure were merely the first events of a "continuing violation."[2] (*Id.* 12:3–26). That is, although the search and seizure occurred on August 21, 2013, the wrongful acts ultimately resulted in the "product" of his arrest and parole

---

his due process claim challenges the procedures of his charges, arrest, and hearings rather than his actual imprisonment or conviction. However, if Plaintiff does seek to challenge the validity of his confinement, Defendants correctly argue that his claim would be barred under *Heck v. Humphrey*.

[2] Plaintiff also argues that the statutory limitations period should be tolled because damages from the seizure of his car and unreasonable search of his person were "speculative at the time of accrual." (Resp. 12:9–10). However, this argument goes against the facts in this case because Plaintiff states in his Response, (ECF No. 86), that he knew of these damages immediately. On August 21, 2013, for example, Plaintiff states that he walked back to his car after the urine test and found that "his car . . . [was] not in the parking lot." (*Id.* 5:22–23); and Neal told Plaintiff—on the day that Kaylor and Sliva towed the car—that Defendants "took from her [Plaintiff's] car keys, house keys, and Galaxy 5 cellphone." (*Id.* 5:21–27). Further, the search by Kaylor could not have resulted in a speculative injury because Kaylor physically stood next to Plaintiff and directly caused the alleged harassment on August 21, 2013. Accordingly, the Court rejects Plaintiff's argument that his damages were speculative as of August 21, 2013, through August 24, 2015.

revocation on and after August 24, 2013; and thereby within the two-year statute of limitations period. (*Id.* 12:13–17).

Plaintiff's statute of limitations argument invokes the "continuing violations" doctrine, which allows a plaintiff to assert a claim that would normally be time-barred if the plaintiff can "state facts sufficient . . . [to] support[ ] a determination that the alleged discriminatory acts are related closely enough to constitute a continuing violation, and that one or more of the acts falls within the limitations period." *Knox v. Davis*, 260 F.3d at 1013 (quoting *DeGrassi v. City of Glendora*, 207 F.3d 636, 645 (9th Cir. 2000)). With § 1983 claims, however, this doctrine does not apply when a single discriminatory act outside the statute of limitations period merely has harsher effects at a later date. *Id.* In other words, "[t]he proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." *Abramson v. University of Hawaii*, 594 F.2d 202, 209 (9th Cir. 1979).

For example, wrongful conduct such as an unlawful search or seizure may result in an immediate, known injury to a plaintiff. In that instance, then, the statute of limitations for the search or seizure begins at the time that a plaintiff knows or has reason to know of the search and seizure—whereas a later related arrest or prosecution is merely the full harm suffered rather than a continuing violation. *See Venegas*, 704 F.2d at 1146; *see also McCune v. Grand Rapids*, 842 F.2d 903, 906 (6th Cir. 1988) (holding false arrest, malicious prosecution, and wrongful suppression of exculpatory evidence are "discrete wrongs . . . [that] will not be viewed by this court as a continuing violation.").

Here, the continuing violations doctrine does not apply to Plaintiff's claim of unreasonable search arising from Kaylor's harassment because that harassment created an immediate invasion of Plaintiff's privacy, of which Plaintiff was aware at the exact time it occurred on August 21, 2013. (*See* Tr. of Parole Hearing 34:1–14, Ex. 13 to MSJ, ECF No. 75-13). Though Plaintiff later suffered parole violation charges, parole revocation, and

incarceration, these events formed the ultimate consequences of the failure to provide a urine sample, not a continuation of similar harassment or wrongful conduct. (*Id.* 26:16–19). Further, the arrest on August 24, 2013, was for Plaintiff's failure to update his address, which was a parole violation unrelated to Plaintiff's failed urinalysis. (Arrest Report at 2, Ex. 6 to MSJ, ECF No. 75-6). Therefore, the statute of limitations for the unreasonable search claim began when the harassment occurred on August 21, 2013; and the claim was time-barred when Plaintiff filed his first Complaint on August 24, 2015.

Plaintiff's unlawful seizure claim against Kaylor and Sliva is equally inapplicable to the continuing violations doctrine. That is, Kaylor and Sliva ordered Plaintiff's car to be towed on August 21, 2013. (Kaylor Dec. ¶¶ 24–30, Ex. 3 to MSJ, ECF No 75-3). Plaintiff also knew of the towing on that same day. (Resp. 5:22–23, 6:3–4) (stating how Plaintiff discovered that his car was "not in the parking lot" after Plaintiff left the Nevada Parole Building because "Defendants Sliva and Kaylor . . . initiate[d] a non-consensual tow"). The seizure therefore amounted to an immediate injury known to Plaintiff on August 21, 2013, which means the two-year statute of limitations began on that date and expired before Plaintiff filed his August 24, 2015 Complaint.

For these reasons, the search and seizure claims that arose from the events on August 21, 2013, were barred by the relevant two-year statute of limitations when Plaintiff filed his first Complaint, (ECF No. 1). Defendants' Motion for Summary Judgment is accordingly granted for counts two and three of Plaintiff's Complaint as stated in the Court's Screening Order, (ECF No. 20).

**B. Immunity**

Because the Court grants Defendants' Motion for Summary Judgment as to counts two and three of Plaintiff's Complaint, only count five of Plaintiff's Complaint remains against Defendants. This remaining claim rests on procedural due process grounds, and it applies to

Defendants Bisbee; Gray, Jr.; Silva; Keeler; Billich; and Foley. (*See* Screening Order at 8–10, ECF No. 20) (showing count five for "Improper Parole Revocation"). Specifically, Plaintiff states that Bisbee; Gray, Jr.; Keeler; and Silva refused Plaintiff's request for Kaylor to appear as a witness during Plaintiff's parole revocation hearings;[3] that Billich presented false allegations and evidence against him; and that Foley wrongfully denied Plaintiff's request for a re-hearing of his parole revocation, and denied Plaintiff his right to audio recordings of the hearings. (Resp. 9:13–10:8); (Pl.'s Answers to Defs.' First Set Interrogs. at 3–4, Ex. 15 to MSJ, ECF No. 75-15).

In response, Defendants argue that they are absolutely immune from any claim against them associated with their decision to deny Plaintiff's parole. (MSJ 11:4–10). Defendants further argue that: (1) they are immune from the claim insofar as Plaintiff seeks monetary damages from them in their state official capacities, and (2) they are entitled to qualified immunity in their individual capacities. (*Id.* 7:12–11:2). The below discussion will address Defendants' absolute immunity defense first, followed by a discussion of qualified immunity.

   1.   **Absolute Immunity**

Plaintiff does not clearly state in his Complaint whether his due process claim challenges the Parole Board's ultimate decision to revoke his parole, or if the claim challenges only the procedures of the revocation, such as the Parole Board's alleged denial of his request for Kaylor to appear as a witness. (*See* Am. Compl. at 14–16, ECF No. 15). Nonetheless, Parole Board Defendants Bisbee; Gray, Jr.; and Keeler contend that they are absolutely immune from

---

[3] Plaintiff's Response to Defendant's Motion for Summary Judgment, (ECF No. 86), claims that the Parole Board denied Plaintiff's requests for witnesses in his parole hearing—namely "Kaylor, Page, and Wright." (Resp. 10:1–8). However, the support that Plaintiff provides on this issue only references the Defendants' Exhibit No. 13, which shows Plaintiff solely seeking to call Defendant Kaylor as a witness at the time of questioning by a Parole Board Commissioner, and that request apparently being ignored. (Tr. of Parole Hearing at 27, Ex. 13). Thus, the Court can only analyze Plaintiff's seemingly ignored request for Defendant Kaylor to serve as a witness in the parole revocation hearings, rather than an outright denial of an ability to call witnesses or a denial of multiple witnesses.

Plaintiff's due process claim for both challenges. (MSJ 11:4–10). In addition, Billich argues for immunity with regard to her testimony in the parole hearings, and Foley argues for immunity concerning her denial of Plaintiff's request for a re-hearing of his parole revocation. (*Id.* 10:3–11:10).

Looking first to the Parole Board, members of a parole board are not entitled to absolute immunity for every action they take. *Swift v. California*, 384 F.3d 1184, 1189 (9th Cir. 2004). Rather, they are entitled to absolute immunity when they perform "quasi-judicial" functions. *Id.* Quasi-judicial functions of a parole board include not only the decisions "to grant, deny, or revoke parole," but also the decision to subpoena certain witnesses. *See McInnes v. State of Cal.*, 943 F.2d 1088, 1094 (9th Cir. 1991) (discussing how a board of administrative law judges "enjoys adjudicatory or quasi-judicial powers" such as the "power to subpoena witnesses"). Those actions are quasi-judicial because they are "'functionally comparable' to tasks performed by judges." *Id.*

Here, Parole Board Defendants Bisbee; Gray, Jr.; and Keeler acted as quasi-judicial officers when they evaluated the evidence against Plaintiff in the parole revocation hearings and ultimately decided to revoke Plaintiff's parole. (*See* Tr. of Parole Hearing at 3–43, Ex. 13 to MSJ). Similarly, the Parole Board's action of failing to discuss or grant Plaintiff's request to call Kaylor as a witness constitutes a quasi-judicial act. That is, though procedural due process requires that Plaintiff have the right to call witnesses in his parole revocation hearings, *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002), the Parole Board's action in this case of not calling one out of several witnesses was quasi-judicial because it was a discretionary act by a neutral decision-maker to regulate the introduction of evidence in an adjudicatory proceeding. *See Swift*, 384 F.3d at 1189 (explaining that courts have applied absolute immunity to parole board officials' decisions regarding the "execution of parole revocation procedures"). Further, the record is not entirely clear that Plaintiff made a specific request to call Kaylor.

Instead, the transcript from the relevant parole revocation hearing only shows that Plaintiff asked, "where is Officer Kaylor so I can cross-examine him," in the middle of questioning by Bisbee. (*See* Tr. of Parole Hearing at 26–27, Ex. 13 to MSJ). The Parole Board seems to have interpreted Plaintiff's question as an attempt to escape the commissioners' questions rather than an attempt to call a witness. (*See id.*). The Parole Board therefore acted to manage the adversarial proceedings as a neutral fact-finder when it deciphered Plaintiff's question about Kaylor. Accordingly, absolute immunity protects the Parole Board's decision to revoke Plaintiff's parole and to not call Kaylor as a witness.

Absolute immunity also applies to Foley's alleged unilateral decision to deny Plaintiff's request for rehearing of his parole revocation. Plaintiff argues that Foley violated his procedural due process rights by making the "unilateral decision to deny [Plaintiff's] request" for the Parole Board to reconsider their revocation ruling. (Pl.'s Answers to Defs.' First Set Interrogs. at 4, Ex. 15 to MSJ). Pursuant to Nevada Administrative Code §§ 213.524 and 213.526, however, Foley, as the Executive Secretary of the Parole Board, has the power to "consider the request [for rehearing of a parole revocation] and determine whether to deny the request or submit the request to members of the [Parole Board]." In other words, Foley exercises discretionary power to evaluate facts and supporting evidence in a rehearing petition to make a final decision of denial. Thus, when Foley executed her discretionary ability to process Plaintiff's re-hearing application in this case, she acted in a quasi-judicial capacity. As a quasi-judicial act, it is then subject to absolute immunity. *See Sellars v. Procunier*, 641 F.2d 1295, 1302 (9th Cir. 1981) (holding that "parole board officials are entitled to absolute immunity from suits by prisoners for actions taken when processing parole applications").

Additionally, the Court finds that Billich is absolutely immune from Plaintiff's claim against her regarding her testimony at Plaintiff's parole revocation hearing. Namely, Plaintiff's claim in count five of his Complaint under the Court's Screening Order, (ECF No. 20), asserts

that Billich—as a representative of "Parole and Probation"—falsely testified in Plaintiff's parole revocation hearings that Plaintiff had criminal charges pending against him at the time of the parole hearings and that Plaintiff failed to correctly update his address. (Resp. 9:14–25). Absolute immunity protects witnesses in a parole hearing, however. *See Holt v. Castaneda*, 832 F.2d 123, 127 (9th Cir. 1987) ("[W]e hold that witnesses who testify in court at adversarial pretrial hearings are absolutely immune from liability under section 1983 for damages allegedly caused by their testimony."); *see also Palismo v. California Dep't of Corr.*, 145 F. App'x 215, 216 (9th Cir. 2005) (holding that two parole officers were absolutely immune from suits for damages "relating to their testimony at parole hearings"). This is especially true for officials who testify on behalf of the parole board. *See Sellars*, 641 F.2d at 1302. Therefore, absolute immunity applies to Billich in this case, and the Court grants Defendants' Motion for Summary Judgment as to Plaintiff's claim for damages against Billich.

Accordingly, the Court grants Defendants' Motion for Summary Judgment as to count five of Plaintiff's Complaint under the Court's Screening Order, (ECF No. 20), based on absolute immunity.

### 2. Immunity in Official Capacity

To the extent that Plaintiff's due process claim seeks damages from Defendants in their official capacities, the Court finds that Defendants are immune. Moreover, Defendants here are officials of either the Nevada Board of Parole Commissioners or the Parole and Probation Division of the Nevada Department of Safety—both of which are Nevada agencies that serve as arms of the State of Nevada. *See, e.g.*, *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995). The Court consequently views Plaintiff's due process claim as one against the State of Nevada itself. *See Will v. Michigan Department of State Police*, 491 U.S. 58, 70 (1989) ("a suit against a state official in his or her official capacity . . . is no different from a suit against the State itself."). Further, the Eleventh Amendment protects Nevada from suits under 42 U.S.C.

§ 1983 that seek monetary damages in federal court. *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999). The only exception to this immunity is when a state explicitly waives it, which Nevada has refused to do. *See* Nev. Rev. Stat. § 41.031(3). Defendants thus remain immune in their official capacities from Plaintiff's due process claim for monetary damages. *See Hogan v. Nevada Bd. of Parole Comm'n*, No. 96-17326, 1998 WL 374740, at *1 (9th Cir. 1998) (stating that the defendant's claims against the Nevada Board of Parole Commissioners "are barred by the Eleventh Amendment"). Accordingly, the Court grants Defendants' Motion for Summary Judgment as to count five in the Court's Screening Order.

### 3. Qualified Immunity for Individual Capacity

Because of the levels of immunity applicable to Defendants discussed above, the only remaining claim by Plaintiff against Defendants is a due process claim against Foley in her individual capacity. This claim concerns Foley's denial of Plaintiff's request for audio transcripts of his parole revocation hearings. Specifically, Plaintiff argues that he "requested copies of all audio/transcripts of the four parole revocation hearings . . . [but] Defendant Foley state[d] that the audio recording of [Plaintiff's] parole hearings were 'unauthorized' and, thus, could not be mailed to [Plaintiff] in prison." ((Pl.'s Answers to Defs.' First Set Interrogs. at 4, Ex. 15 to MSJ). Plaintiff asserts that Foley's denial ultimately violated his due process rights because it prevented him from "timely preparing an appeal . . . and further prolonged [Plaintiff's] incarceration." (*Id.*). In response, Defendants argue that Foley is qualifiedly immune from Plaintiff's claim. (MSJ 11:1–2).

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether qualified immunity applies, courts take a two-prong analysis. The first prong requires that the government official's conduct "violated a constitutional right"

of the plaintiff. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The second prong requires that the constitutional right was "clearly established" at the time of the alleged violation. *Id.* Courts may apply the two-pronged analysis in any order, and the failure to find one prong results in the application of qualified immunity to the conduct of the official at issue. *Id.*

Looking initially to the second prong of the qualified immunity analysis, a constitutional right is clearly established when it is "sufficiently clear that a reasonable official would understand that what he is doing violates" a right of the plaintiff. *Wilson v. Layne*, 526 U.S. 603, 615 (1999). In other words, this does not mean that "the very act in question has previously been held unlawful;" but it does mean that "in light of pre-existing law the unlawfulness [is] apparent." *Id.*

In this case, the Court is unaware of—and Plaintiff does not provide—any clearly established right to have audio transcripts provided to a prisoner after a parole revocation hearing. *See Collins v. Jordan*, 110 F.3d 1363, 1369 (9th Cir. 1996) ("The plaintiff bears the burden of showing that the right he alleges to have been violated was clearly established."); *see also Hodge v. Carey*, No. CIV S-02-2157DFLEFBP, 2007 WL 163247, at *7 (E.D. Cal. Jan. 18, 2007), *report and recommendation adopted*, No. S-02-2157 DFLEFBP, 2007 WL 1975486 (E.D. Cal. July 3, 2007) ("This court also notes that it is not clearly established federal law that prisoners being considered for parole have a right to trial transcripts at parole revocation hearings."). Even if there was, however, the evidence in this case shows that Foley did not deprive Plaintiff the right to receive transcripts of his parole hearings. Instead, the evidence shows that Foley denied Plaintiff's request because it was "unauthorized;" but Plaintiff could still have access to a written form of the audio recordings if he could "find someone outside the prison to do the transcribing or minutes [of the audio transcripts] for [Plaintiff]." (Tr. of Parole Hearing at 3, Ex. 13 to MSJ). Accordingly, the Court finds that Foley did not violate a clearly established right of Plaintiff's; and thus Foley is entitled to qualified immunity against

Plaintiff's due process claim in count five of the Court's Screening Order, (ECF No. 20). Summary judgment is therefore granted in favor of Foley as to count five of Plaintiff's Complaint.

IV. **CONCLUSION**

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, (ECF No. 75), is **GRANTED**.

The Clerk of Court shall enter judgment accordingly.

**DATED** this __18__ day of September, 2018.

_____
Gloria M. Navarro, Chief Judge
UNITED STATES DISTRICT JUDGE